## J. ALAN APPELGET v. STATE.

No. A-4695.　Opinion Filed Jan. 30, 1926.
(242 Pac. 1056.)

Titus & Talbot, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Fred Hansen, Asst. Atty. Gen., for the State.

EDWARDS, J.　The plaintiff in error, hereinafter called defendant, was indicted by a grand jury upon a charge of diverting the funds of the Bank of Goltry, of which he was the president and managing officer, and thereby reducing the value of the assets of said bank, with the intent to accomplish or to aid in accomplishing its in-

solvency as the offense is created and defined by section 4182, Comp. St. 1921.

The record discloses a state of facts about as follows: That the defendant was the president and managing officer of the Bank of Goltry. That on the 16th day of November, 1921, the bank was insolvent and closed by the state bank commissioner. That two days before the bank was closed by the commissioner, the defendant, knowing the condition of the bank, procured and assisted in bringing about a 'trade between one W. H. Sparks, who had a small stock of merchandise in the town of Goltry and who was a brother-in-law of defendant, and one J. J. Johnson, an employee in the store of Sparks, whereby Sparks sold the stock to Johnson for an agreed price of $4,150. That Johnson had no property except a small residence house worth about $500, in which he and his wife and children lived, and was working for a salary of $15 per week, gave his note to the bank for the sum of $4,500 and took credit for said sum in the bank, and Johnson then gave his check to Sparks for $4,150. Sparks was at the time indebted to the bank in the sum of about $5,600 or $5,700, a part of which notes had been rediscounted at an Enid bank. The Johnson check was then deposited in the bank by Sparks and $3,573 of his notes to the bank canceled and delivered to him, and he was given a credit for $577 on the books of the bank. Johnson was given a credit on his account of $350. The stock of merchandise transferred from Sparks to Johnson was of the value of about $1,500. Johnson operated it a few days and it was closed, and he soon thereafter went into bankruptcy. The evidence of Johnson is that he was called to the bank by the defendant in the afternoon of November 14th and was induced to make the trade for the merchandise; that he knew nothing about the value of the stock except what was told him by the defendant or Sparks; that no invoice was taken; that he did not examine the books and did not know what indebtedness was against

the stock; that he ran it four or five days, made sales aggregating $38, and it was then closed by creditors and the merchandise then invoiced $910. His evidence indicated that he was practically without business judgment and unfit to conduct even a small business.

It is the theory of the state that the defendant, knowing the bank would fail, sought to release Sparks from his liability on his notes to the bank by substituting therefor the notes of Johnson and thereby reducing the value of the assets of the bank.

It is not argued that the indictment is insufficient, nor that the evidence is insufficient to support the verdict, but error is predicated on the admission of incompetent evidence on the part and on the exclusion of competent evidence offered by the defendant. We do not consider it necessary to take up in detail the different items of evidence to which objections were made, nor the items admitted over the objections of defendant. We have examined all the contentions and find no error that would warrant a reversal. It appears plain to the court that the defendant, expecting the bank of which he was president soon to be closed, sought to exonerate Sparks from his liability to the bank by substituting the practically worthless notes of Johnson, and if, as he now contends, the notes of Johnson placed in the bank were worth as much dollar for dollar as the Sparks note, still the evidence conclusively shows that Sparks was given an additional credit of $626, all of which was drawn out by him except the sum of $87.90, and that Johnson was given an additional credit of $350 by which the value of the bank's assets was decreased $976. The transaction bears plain evidence of fraud upon its face, and we see no reason to disturb the verdict and the judgment of the court.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.